UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

UNIFIED TELECOMMUNICATIONS, INC., and SUSAN LOPEZ,

Plaintiffs,

v.

CARNIVAL CRUISE LINES,

Defendant.
_____/

CASE NO. 95-1274-CIV-DAVIS
MAGISTRATE JUDGE TURNOFF

**SUMMARY JUDGMENT ORDER**



FILED by _____ D.C.
JUL 30 1997
CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

THIS MATTER is before the Court on the Defendant's Motion for Final Summary Judgment (D.E. # 38). The Plaintiffs have responded. The Court has thoroughly reviewed the parties' pleadings, the oral arguments of counsel presented at the July 22, 1997 hearing, and the entire record. For the reasons cited below, the Court will grant the Defendant's motion.

**FACTUAL BACKGROUND**

Plaintiff Susan Lopez is a New Jersey resident who, along with her two daughters, established Unified Telecommunications in 1993. Lopez Depo. at 8. Unified is the other Plaintiff in this case. The three women ran the company out of their home. *Id.* at 17. Unified bought blocks of telephone long-distance time from AT&T and resold them for a profit in the form of long-distance calling cards. *Id.* at 8-12. Unified was AT&T's authorized agent. *Id.* Crew members of passenger cruise ships, such as those Defendant Carnival Cruise Lines operated, represented Unified's primary market. *Id.* at 22-23. By July 1994, 11,000 Carnival employees had purchased calling cards from Unified. *Id.* at 22.

On July 8, 1994, Carnival administrative assistant Anna Colon-Dalmau (Colon) received a

phone call from a man identifying himself as Bob Thompson. Colon Decl. at ¶ 3, Colon Depo. at 10-11. Thompson said he worked for International Marketing Information Systems, an authorized AT&T representative. Colon Decl. at ¶ 3, Colon Depo. at 12. Thompson told Colon that Unified's solicitation of Carnival crew members was part of a calling card scam. Colon Decl. at ¶¶ 4, 5, and 8, Colon Depo. at 11-12. He repeatedly used the word scam during the conversation. Colon Decl. at ¶ 4, Colon Depo. at 11. Thompson indicated that the FBI could subpoena anyone buying Unified's calling cards. Colon Decl. at ¶ 6, Colon Depo. at 12. Thompson urged Carnival to immediately warn its crew members not to buy Unified's cards, and said that a rival cruise line, Royal Caribbean, had been tipped off to the scam and had warned its crew members. Colon Decl. at ¶¶ 4, 7, 11, Colon Depo. at 11-12. Thompson said he was acting on behalf of AT&T, and sounded professional and credible to Colon. Colon Decl. at ¶¶ 9-10.

Following the conversation, Colon typed up a report and gave it to her boss, Brendan Corrigan. Colon Decl. at ¶ 12, Colon Depo. at 15. Corrigan is the vice president of operations and security director at Carnival. Corrigan Depo. at 5. At Corrigan's request, Colon prepared a warning flyer to be posted on crew bulletin boards on Carnival's nine cruise ships. Colon Decl. at ¶ 12, Colon Depo. at 17-18. Colon does not recall whether Corrigan suggested the specific content of the flyer, or whether she composed it on her own. Colon Depo. at 17-20. The flyer stated:

### FRAUD ALERT

<u>ATTENTION ALL SHIPBOARD PERSONNEL:</u>

A COMPANY GOING BY THE NAME OF:

> UNIFIED TELECOMMUNICATIONS INC.
> 712 GROVE STREET, CLIFTON, NEW JERSEY
> 1-800-473-3311 OR 201-473-3212

### IS SOLICITING CREWMEMBERS TO TAKE PART IN

2

**A TELEPHONE CALLING CARD BEING MARKETED AS AN OFFICIAL AT&T PRODUCT, BUT IT IS NOT.**

THIS COMPANY IS RUN BY SUSAN LOPEZ AND HER 13YR (sic) OLD DAUGHTER OUT OF THEIR HOME.

LETTERS HAVE BEEN SENT TO CRUISE SHIP CREWMEMBERS ENTICING THEM TO ACCEPT THESE CARDS. ALTHOUGH CREWMEMBERS MAY BENEFIT FROM SUCH A CARD IT IS NONETHELESS ILLEGAL.

ANYONE TAKING PART IN THIS SCAM MAY BE SUBPEONED (sic) BY THE F.B.I. IN AN ATTEMPT TO PROSECUTE UNIFIED TELECOMMUNICATIONS INC. FOR ALLEGED CRIMINAL CHARGES.

**FRAUD ALERT**

Appendix to Defendant's Summary Judgment Motion (App.) at 53.

Colon and Corrigan discussed the call from Thompson and the proposed flyer. Corrigan Decl. at ¶ 5, Corrigan Depo. at 13-16. Corrigan had never heard of Thompson, but did not find it unusual that an AT&T representative would call Carnival to warn it about telephone card problems. Corrigan Decl. at ¶¶ 5-8, Corrigan Depo. at 27-30. AT&T security representatives had called Corrigan's office more than ten times in the past to warn Carnival of stolen calling cards involving passengers and crew members. Corrigan Decl. at ¶¶ 6-7, Corrigan Depo. at 27-30.

Based on the previous calling card problems and his belief that Thompson was an AT&T representative, Corrigan ordered the flyer to be sent to the captains of all nine Carnival ships. Corrigan Decl. at ¶ 11, Corrigan Depo. at 16. Corrigan believed that as Carnival's security director, he had a duty to warn crew members of potential calling card scams. Corrigan Decl. at ¶ 12. Many of Carnival's crew members are non-English-speaking foreign citizens who are particularly vulnerable to calling card fraud. *Id.* at ¶ 13. Law enforcement agencies had previously interviewed crew members about calling card problems, which had inconvenienced the crew and the cruise lines.

3

Corrigan Depo. at 28. Corrigan wanted to avoid that situation again. *Id.* In addition, crew members' U.S. seamen's visas could be jeopardized if they were involved in criminal activity or other wrongdoing. Corrigan Decl. at ¶ 13.

The warning flyer was sent to all nine ships on July 8 and 11, and was posted on crew bulletin boards in English, French, Italian, and Spanish. Colon Depo. at 26-30, Corrigan Decl. at ¶ 10, Corrigan Depo. at 34-37. Before sending the memo, neither Corrigan nor Colon called Thompson or anyone at AT&T to verify Thompson's identity or story. Colon Depo. at 24-25, Corrigan Depo. at 24-32. Nor did they call the FBI, Susan Lopez, or anyone else to determine the veracity of Thompson's allegations. Colon Depo. at 24-25, Corrigan Depo. at 24-32.

At the time, neither Corrigan nor Colon had heard of Susan Lopez or Unified Telecommunications. Corrigan Decl. at ¶ 14, Colon Decl. at ¶ 18. Lopez did not know anyone at Carnival, had never personally dealt with anyone in Carnival's administration, and was unaware of any enemies there. Lopez Depo. at 53.

A few days after the warning flyer was posted, Lopez began getting calls from crew members of Carnival and other cruise lines, saying they were afraid to use her calling cards. Lopez Depo. at 31-36. Lopez immediately contacted an attorney, Charles Helein. *Id.* at 35-36. On July 21, 1994, Helein sent Carnival a letter notifying the company that the warning flyer was false and defamatory. Perez Decl. at ¶ 3, App. at 55. Helein and Arnaldo Perez, Carnival's assistant general counsel, discussed the matter over the next several days. On August 1, Helein sent another letter demanding that Carnival post a flyer on crew bulletin boards retracting the warning. Perez Decl. at ¶ 5, App. at 57-58.

Before posting the retraction, Perez undertook his own investigation. Perez Depo. at 11. He contacted Thompson at a number that Colon gave him. *Id.* at 14-18. Thompson identified himself

4

as being with a company other than AT&T, and repeated the same claims he had made to Colon. *Id.* at 17-18. Perez next contacted AT&T security. *Id.* at 20. An AT&T representative confirmed that Lopez and Unified were authorized to market AT&T products. *Id.* at 21.

After speaking with Corrigan, Colon, and other Carnival personnel, Perez ordered the retraction posted in the crew areas of Carnival's nine ships. *Id.* at 26-27. However, he made several changes to the statement that Helein had proposed. *Id.* at 27-30. Perez believes that Helein or one of his associates approved the revised retraction before he sent it to the ship captains, but the record is not clear on this issue. *Id.* at 29-30. On September 15, 1994, the following flyer was posted:

RETRACTION!!!

ATTENTION ALL SHIP PERSONNEL

THE "FRAUD ALERT" NOTICE PREVIOUSLY POSTED

REGARDING UNIFIED TELECOMMUNICATIONS, INC.

WAS TOTALLY IN ERROR

AT&T has informed Carnival Cruise Lines that AT&T
has provided Unified Telecommunications, Inc. with
calling card numbers.

The usage of calling cards made available by Unified will
not result in your being contacted by any government
agents or officials.

If anyone has questions he/she may call us at:

[Phone number omitted]

for further information.

Corrigan Decl. at ¶ 17, App. at 61.

The retraction did not help Unified. Lopez Depo. at 36. By September, Lopez had lost the entire business. *Id.* On October 4, 1994, Unified and Lopez filed a three-count complaint against

5

Carnival in United States District Court in New Jersey, alleging defamation and tortious interference with a business relationship. The case was transferred to the Southern District of Florida and assigned to this Court on June 8, 1995. Carnival contends that it is entitled to summary judgment on the defense of qualified privilege.

## DISCUSSION

## I. THE STANDARD OF REVIEW

A moving party is entitled to summary judgment only where no genuine issue of material fact exists and the party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). On a motion for summary judgment, a court must view all the evidence in a light most favorable to the non-moving party. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). All reasonable doubts as to the facts are to be resolved in favor of the party opposing summary judgment. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron and Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988).

While the burden on a party seeking summary judgment is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A mere sliver of evidence in favor of the party opposing the motion, or evidence that is merely colorable or not significantly probative, is insufficient to defeat a properly supported motion. *Id.* Despite the presumption in favor of the non-moving party, the Court must bear in mind that the purpose of Rule 56 is to eliminate the

needless delay and expense of unnecessary trial. *Celotex*, 477 U.S. at 322-23.

## II. CARNIVAL IS ENTITLED TO SUMMARY JUDGMENT ON THE QUALIFIED PRIVILEGE DEFENSE ON THE DEFAMATION CLAIMS

*A. The Qualified Privilege*

Under Florida law,[1] a statement made by one party having an interest or duty in the subject matter to another person having an interest or duty is conditionally, or qualifiedly, privileged, even though the statement may be false and otherwise actionable. *Lewis v. Evans*, 406 So.2d 489, 492 (Fla. 2d DCA 1981). The nature of the duty or interest may be public, personal or private, legal, judicial, political, moral, or social. *Id.* If the statement is privileged, a Plaintiff may only overcome that privilege and recover on a defamation claim if she can show that the statement was made with express malice. *Id.; Nodar v. Galbreath*, 462 So.2d 803, 810 (Fla. 1984).

The question of whether publication of a false statement is subject to the qualified privilege is an issue of law for the Court to determine when the circumstances surrounding publication are undisputed. *Nodar*, 462 So.2d at 810; *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541 (M.D. Fla. 1993). Here, the facts surrounding Carnival's publication are undisputed. The record establishes that Thompson gave false information to Carnival. The company -- without attempting to verify the accuracy of Thompson's statements -- then published the false information to its crew members in areas of its nine ships restricted to crew members only. There are no factual questions as to whether the statement was false, who made it, to whom it was made, or when it was made. Therefore, it is appropriate for this Court to decide the issue of qualified privilege as a matter of law.[2]

---

[1] Both parties agree that Florida law governs the Plaintiffs' claims.

[2] The Plaintiffs argue that the statement was improperly published to Royal Caribbean Cruise Lines. Plaintiffs' Response to Defendants' Motion for Summary Judgment at 12. However, there

7

The elements of qualified privilege are (1) good faith, (2) an interest to be upheld, (3) a statement limited in scope to a specific purpose, (4) publication on a proper occasion, and (5) publication in a proper manner. *Nodar*, 462 So.2d at 810; *Shaw*, 818 F. Supp. at 1542. It is not necessary for the Defendants to prove the existence of each of these elements; rather, "[i]n order for the communication to be considered privileged, it need only be 'published upon an occasion that makes it conditionally privileged.'" *Boehm v. American Bankers Ins. Group, Inc.*, 557 So.2d 91, 93 (Fla. 3d DCA 1990), *quoting Nodar*, 462 So.2d at 809. The mode, manner, or purpose of the communication bear on the question of whether the Defendant has forfeited the privilege, not to whether the privilege existed. *John Hancock Mut. Life Ins. Co. v. Zalay*, 581 So.2d 178, 180 (Fla. 2d DCA 1991), *citing Nodar,* 462 So.2d at 809.

The evidence establishes that Carnival had a qualified privilege to publish the warning flyer to its crew members. On the issue of good faith, the record shows that (a) Carnival had previously had problems with its crew members being solicited to buy fraudulent calling cards, (b) AT&T had previously warned Carnival about such problems, and (c) Carnival executives had reason to believe that there would be problems with Unified's cards if it did not warn its crew members. Carnival had an interest in protecting both itself and its crew members from the inconvenience and potential penalties associated with the fraudulent marketing of calling cards, and the crew members had an interest in being protected from the same problems.

The flyer that Carnival published was limited in scope to the specific purpose of warning its crew members that there could be problems associated with buying Unified's cards; it did not otherwise impugn or defame Lopez or her company. The statement was published on a proper

---

is no record evidence that *Carnival* was responsible for that publication. On this question, the Plaintiffs have failed to raise a genuine factual issue sufficient to survive summary judgment.

8

occasion in that Carnival had been warned about a problem with Unified's calling cards and had an interest in alerting its crew members as soon as possible. Finally, the manner of publication was proper in that the flyer was posted only in areas where crew members could see it. No one has alleged that Carnival disseminated the flyer to passengers or others outside Carnival.

### B. Express Malice

Since Carnival had a qualified privilege to post the flyer when and where it did, the Court next must determine whether the Plaintiffs have overcome that privilege by a showing of express malice on the part of Carnival.

Although the circumstances surrounding publication may give rise to an inference that a statement was made with express malice, the mere fact that the statement was false does not prove express malice. *Nodar*, 462 So.2d at 810. Express malice traditionally has been defined as "ill will, hostility, and an evil intention to defame and injure." *Lewis*, 406 So.2d at 492. However, the Florida Supreme Court has indicated that express malice goes beyond just hostility or ill will. *Nodar*, 462 So.2d at 812. "Strong, angry, or intemperate words do not alone show express malice; rather, there must be a showing that the speaker used his privileged position to gratify his malevolence." *Id.* at 811 (internal quotation marks omitted). A speaker must be motivated "*more* by a desire to harm the person defamed than by a purpose to protect the personal or social interest giving rise to the privilege." *Id.* (emphasis added).

Under that definition, the Plaintiffs have not shown that there was express malice in this case. While the record establishes that Carnival failed to investigate Thompson's identity or story before posting the warning flyer, reckless behavior of that type does not rise to the level of express malice.

9

*See Nodar*, 462 So.2d at 806; *Lewis*, 406 So.2d at 492-93.[3] The Plaintiffs have not established that anyone at Carnival even knew who they were, much less bore them any ill will. Lopez acknowledged during her deposition that she had never met anyone at Carnival, and knew no one who had a grudge against her. Given those circumstances, the Plaintiffs cannot show that Carnival was motivated by a desire to harm Lopez or her business.

Lopez and Unified argue that because Carnival began selling its own calling cards to crew members in September 1994, the Court should infer that Carnival had a malevolent intent in publishing the warning flyer -- driving potential competition out of business. However, there is no record evidence to support this inference. And even if there were, under *Nodar*, the Plaintiffs would have to show that Carnival's desire to sell its own calling cards was a greater motivating factor than the desire to warn its crew members of a potential calling card scam. The evidence does not support such a conclusion.

Accordingly, because Carnival had a qualified privilege to post the warning flyer, and because Lopez and Unified have not introduced any material factual issue on the question of express malice, the Court will grant summary judgment in favor of Carnival on the defamation claims.

### III. CARNIVAL ALSO IS ENTITLED TO SUMMARY JUDGMENT ON THE TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP CLAIM

A plaintiff may not recover under Florida law for tortious interference with a business relationship if the defendant has a qualified privilege to interfere. *Florida Fern Growers Ass'n v.*

---

[3] Unified and Lopez argue that reckless disregard for truth or falsity constitutes express malice. Plaintiffs' Response to Defendants' Motion for Summary Judgment at 8. That confuses express malice with actual malice -- the constitutional standard public figures must meet to recover for defamation. *See Nodar*, 462 So.2d at 806; *Lewis*, 406 So.2d at 493. Actual malice is not at issue in this case.

10

*Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. 5th DCA 1993); *Boehm*, 557 So.2d 91; *McCurdy v. Collis*, 508 So.2d 380 (Fla. 1st DCA 1987). The standards governing the existence of a qualified privilege are the same for this tort as they are for defamation. *Boehm*, 557 So.2d at 92-93; *McCurdy*, 508 So.2d at 383-84. Similarly, the only way for a plaintiff to overcome the qualified privilege is to show express malice. *Boehm*, 557 So.2d at 93; *McCurdy*, 508 So.2d at 383.

For the same reasons cited in Section II *supra*, the Court finds that Carnival had a qualified privilege to interfere in the business relationship between Unified and Carnival crew members. And for those same reasons, the Court also finds that the Plaintiffs have failed to raise any genuine issues of material fact on the existence of express malice. Therefore, the Court will grant summary judgment in favor of Carnival on the claim of tortious interference with a business relationship. *Accord Boehm*, 557 So.2d 91.

## CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Defendant's Motion for Final Summary Judgment (D.E. # 38) is **GRANTED**.

DONE AND ORDERED in Chambers in Miami, Florida, this 30th day of July 1997.

_____
EDWARD B. DAVIS
CHIEF UNITED STATES DISTRICT JUDGE

Copy:
    W. Jeffrey Barnes
    Harley Tropin